IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT KOTSUR, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>GOODMAN GLOBAL, INC., GOODMAN MANUFACTURING COMPANY, L.P., and GOODMAN COMPANY, L.P.,<br><br>    Defendants. | Civil Action No. 2:14-cv-01147-NS<br><br>Oral Argument Requested |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT**

Beyond a welter of pleading defects outlined below, the central question raised by Plaintiff's complaint is whether a manufacturer may offer a parts-only warranty. According to his complaint, Mr. Kotsur purchased a residence with a Goodman heating and air conditioning system. Like all consumers, he was offered an extended warranty covering labor, but turned it down, and his residual warranty from Goodman Manufacturing covered all parts for a period of five years. Mr. Kotsur alleges that three and a half years after he moved in, his unit failed and a new evaporator coil supplied by Goodman Manufacturing without cost pursuant to the warranty cured the problem.

To begin with, Mr. Kotsur's breach of express warranty claim is unsustainable because Goodman Manufacturing complied with its warranty obligations. Mr. Kotsur's breach of implied warranty of merchantability claim is unsustainable because he pleads no facts establishing that his unit was defective at the time it was sold. To the contrary, Mr. Kotsur used

the unit for over three and a half years before making any warranty claim, and the free replacement part that he obtained from Defendants resolved the alleged problems with his unit.

Plaintiff's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") fails because (i) it is barred by the economic loss doctrine, (ii) there is a complete absence of reliance, and (iii) he does not plead it with the particularity required by Rule 9(b). Plaintiff's unjust enrichment claim fails because such a claim cannot be maintained when the relationship of the parties is governed by an express contract in the form of a product warranty.

As a result, all of these claims should be dismissed.

## I. ALLEGATIONS IN THE COMPLAINT

On December 28, 2009, Mr. Kotsur purchased a new home that had been built by Richmond American Homes. (Comp. ¶ 69.) The home came equipped with a split-system "Goodman Unit," consisting of an outdoor heat pump and an indoor air handler. (*Id.*) Mr. Kotsur does not allege that he interacted or communicated with any Goodman Defendant as part of his sales transaction with Richmond. In fact, he does not allege that he interacted or communicated with any Defendant at any time for any reason.[1]

Plaintiff's Goodman unit came with a "Limited Warranty," under which Goodman Manufacturing warranted all parts for a period of five years.[2] (Limited Warranty, attached as Exhibit A; *see also* Compl. ¶ 58-61.) That period would extend to ten years if, among other

---

[1] Although Mr. Kotsur asserts that the Defendants made certain representations about their products on their websites (Compl. ¶¶ 65-66), he does not allege that he ever saw such representations or that he even visited the websites.

[2] Mr. Kotsur did not attach the limited warranty to his complaint. He does purport to describe its terms, however, and his breach of express warranty claim is based upon it. (Compl. ¶¶ 58-61, 94.) This Court, thus, may properly consider it at the motion to dismiss stage. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

things, the unit were properly registered within 60 days of installation.  (*Id.*)  Mr. Kotsur does not allege that he registered his unit.  The limited warranty also provides that Goodman Manufacturing "will furnish a replacement part, without charge for the part only, to replace any part that is found to be defective due to workmanship or materials under normal use and maintenance."  (*Id.*)  It does not cover "labor, freight, or any other cost associated with the service, repair or operation of the unit."  (*Id.*)  It also excludes liability for incidental and consequential damages.  (*Id.*)

Mr. Kotsur seeks to represent a putative class consisting of "[a]ll persons residing in the Commonwealth of Pennsylvania who purchased a Goodman Unit since January 2007 for primarily personal, family or household purposes, and not for resale."  (Compl. ¶ 79.)  He alleges that these products have "defective evaporator coils" that "prematurely leak refrigerant."  (*Id.* ¶¶ 2, 23, 96, 107.)

Mr. Kotsur does not allege that he experienced any problems with his Goodman unit until May 2011 – nearly one and a half years after purchasing his home.  (*Id.* ¶ 70.)  He alleges that a technician from High Tech Heating & Cooling determined at that time that the unit "was low on refrigerant," but the technician "could not locate a leak" in the evaporator coil or any other component of the unit.  (*Id.* ¶ 70.)  The technician added refrigerant and Mr. Kotsur used his Goodman unit without incident for another two years.  (*Id.* ¶¶ 70-71.)

In May and July of 2013, Mr. Kotsur alleges that he incurred costs to have his unit serviced by Guy M. Cooper, Inc., Mechanical Contractors.  (*Id.* ¶¶ 71-72.)  He further alleges that, in August 2013, Cooper found that the unit "had frozen up" and "lost refrigerant" allegedly due to "a leak in the evaporator coil."  (*Id.* ¶ 73.)  Cooper subsequently submitted a warranty claim on behalf of Mr. Kotsur and "Goodman provided [a replacement] evaporator coil free of

charge." (*Id.* ¶ 74.) Mr. Kotsur does not allege that he experienced any further problems with his Goodman unit. (*See id.*)

## II. STANDARD OF REVIEW

A cause of action must be dismissed under Rule 12(b)(6) "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The allegations must raise the right to relief beyond "possibility" and "above the speculative level," *id.* at 555, 557, nor are legal conclusions and conclusory factual allegations entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (the pleading standard "demands more than an unadorned, the defendant unlawfully-harmed-me accusation"). A pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Rather, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

In addition, allegations of fraudulent conduct under the UTPCPL must be pled with particularity pursuant to Rule 9(b). *Fass v. State Farm Fire & Cas. Co.*, No. 06-02398, 2006 U.S. Dist. LEXIS 51478, at *6-7 (E.D. Pa. July 26, 2006). The rule requires a plaintiff to "plead the who, what, when, where and how" of the allegedly fraudulent conduct. *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

Mr. Kotsur, the only named plaintiff, fails to satisfy these standards and, thus, the complaint should be dismissed in its entirety. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class").

### III. ARGUMENT

A. **Plaintiff Fails To Plead A Plausible Claim For Breach Of Express Warranty.**

  1. **The allegations as to breach are deficient.**

The central question raised by the complaint is whether a manufacturer can provide a parts-only warranty. "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525 (1992). The limited warranty at issue plainly provides: "As its only responsibility, and your only remedy, Goodman will furnish a replacement part, without charge for the part only, to replace any part that is found to be defective due to workmanship or materials under normal use and maintenance." (Compl. ¶ 59 & Ex. A.)  The warranty obligates Goodman Manufacturing to provide a no-charge replacement of any defective part during the warranty period; and even assuming that the evaporator coil was defective, Goodman Manufacturing fully complied with the warranty.

Pennsylvania permits a manufacturer to issue a warranty that limits any recovery to "replacement of non conforming goods or parts" and to make that the sole, exclusive remedy. 13 Pa. Cons. Stat. § 2719(a)(1)-(2).  Such a remedy does not fail if the alleged defect can be cured by a replacement part. *New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 929-30 (Pa. Super. Ct. 1989) (reasoning that limited remedy did not fail of its essential purpose when manufacturer cured alleged defect by providing replacement part). When Mr. Kotsur allegedly experienced a problem with the evaporator coil in his unit, a free replacement part was provided to him. (Compl. ¶ 74.)  There is no allegation that the replacement part failed to correct any issue with his unit. Plainly stated, the factual allegations in the complaint are insufficient to support the legal conclusion that the limited warranty failed of its essential purpose.

## 2. The terms of the limited warranty are not unconscionable.

Mr. Kotsur's claims all seek to evade the plain terms of his contract with Goodman Manufacturing, and one of plaintiff's asserted means is to characterize the warranty as "unconscionable." (*Id.* ¶¶ 62-64.) The factual allegations in the complaint hardly suffice for such a characterization under the law.

In Pennsylvania, a warranty may properly limit the remedies available in the event of a breach and "Pennsylvania courts routinely uphold limiting liability clauses." *Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc.*, No. 01-1083, 2002 U.S. Dist. LEXIS 1460, at *8 (E.D. Pa. Jan. 31, 2002). Indeed, Pennsylvania's version of the UCC expressly permits such limitations. 13 Pa. Cons. Stat. § 2316(d) ("Remedies for breach of warranty can be limited in accordance with the provisions of this division . . . ."); *id.* § 2719(a)(1) ("The agreement may . . . limit or alter the measure of damages recoverable under this division, as by limiting the remedies of the buyer to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts."); *id.* § 2719(c) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.").[3]

To establish unconscionability, Mr. Kotsur would have to show both that (1) he had "no meaningful choice" with respect to the warranty and (2) that the warranty "unreasonably favors" Goodman. *Borden, Inc. v. Advent Ink Co.*, 701 A.2d 255, 264 (Pa. Super. Ct. 1997); *Choice v. Option One Mortg. Corp.*, 2003 U.S. Dist. LEXIS 9714, at *19 n.10 (E.D. Pa. May 12, 2003). The allegations in the complaint are insufficient to establish either.

---

[3] Warranty limitations such as the one in this case, which cover parts but not labor, are not uncommon. Even the Federal Trade Commission acknowledges their utility. *See* 16 C.F.R. § 700.10 ("Under a limited warranty that provides only for replacement of defective parts and no portion of labor charges, section 102(c) [of the federal Magnuson-Moss Warranty Act] prohibits a condition that the consumer use only service (labor) identified by the warrantor to install the replacement parts.").

First, Mr. Kotsur does not allege that the terms of the limited warranty were inconspicuous or that he was unaware of them. The warranty is a one-page document in readable font that is explicitly labeled as a "Limited Warranty." (Ex. A.) It describes the consumer's remedies in plain language, conspicuously disclaiming the types of damages at issue. (*Id.*) While there is a reversed presumption in personal injury cases, limitations of remedies are presumptively enforceable when, as here, the limitation of damages relates, as here, to economic damages. 13 Pa. Cons. Stat. § 2719(c).

Second, the doctrine of unconscionability is not meant to "disturb[] . . . allocation of risks," but rather to prevent "oppression and unfair surprise." *Borden*, 701 A.2d at 264 (internal quotations omitted). And, "it is settled law that mere unequal bargaining power between the parties to a contract does not render the contract, or a provision thereof, unconscionable." *Id.* Nor can a plaintiff "attempt to open [the] door to additional damages outside those provided for in the express warranty" simply by characterizing the warranty as unconscionable. *Harbison v. Louisiana-Pacific Corp.*, No. 13-0814, 2014 U.S. Dist. LEXIS 14993, at *24-25 (W.D. Pa. Feb. 6, 2014).

In *Harbison*, a consumer brought a putative class action against a manufacturer of trimboard used in the construction of his home, alleging that the trimboard was defective because it prematurely deteriorated under normal use. *Id.* at *9-10. The manufacturer provided a limited express warranty, which the consumer alleged was unconscionable because the manufacturer purportedly knew the product would fail. *Id.* at *5, 23-24. The court rejected this position, reasoning that such knowledge, even if true, did not render the terms of the warranty unconscionable. *Id.* at *24 ("Defendant agreed to pay a set amount in its express warranty,

which is permissible under the UCC and Pennsylvania's Commercial Code. The express terms of that warranty are binding on Defendant—and on Plaintiff.").

**B.     Plaintiff Fails To Plead A Plausible Claim For Breach Of The Implied Warranty Of Merchantability.**

Mr. Kotsur's claim for breach of the implied warranty of merchantability fails because he alleges no facts plausibly establishing that his Goodman unit was unmerchantable at the time it was sold. Goods are merchantable when they "are fit for the ordinary purposes for which such goods are used." 13 Pa. Cons. Stat. § 2314(b)(3). A prerequisite to any claim for breach of the implied warranty of merchantability is that the "product in question be defective at the time it leaves the hands of the seller." *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 94 n.10 (3d Cir. 1983) (product must be defective "*at the time of sale* for an implied warranty of merchantability to be breached") (emphasis added).

Mr. Kotsur alleges precisely the opposite in his complaint. He states that he did not experience any problems with his Goodman unit until almost one and a half years after he began using it. (Compl. ¶¶ 69-70.) At that time, a technician made a small repair and Mr. Kotsur continued to use the unit for another two years without incident. (*Id.* ¶ 71.) When a technician allegedly determined that the evaporator coil in Mr. Kotsur's unit had to be replaced, the coil was replaced with a new coil and Mr. Kotsur does not allege that he experienced any further problems with his unit. (*See id.* ¶ 74.) When a plaintiff can point only to problems that occurred with a product after years of use, he cannot maintain an action against a manufacturer for breach of the implied warranty of merchantability. *See Nationwide Ins. Co. v. Gen. Motors Corp./Chevrolet Motor Div.*, 625 A.2d 1172, 1178 (Pa. 1993) (stating that an "implied warranty" does not "extend to future performance"); *see also Sheris v. Nissan N. Am., Inc.*, No. 07-2516, 2008 U.S. Dist. LEXIS 43664, at *14-15 (D.N.J. June 3, 2008) (because plaintiff was able to

drive an automobile for nearly two years before needing to replace his brake pads and rotors, he could not sustain his claim that the car was not merchantable).

C.  **Plaintiff Fails To Plead A Plausible Claim For Violation Of The UTPCPL.**

The UTPCPL claim should be dismissed for two independent reasons.  First, it is barred by the economic loss doctrine, which precludes recovery for purely economic losses when, as in this case, the alleged "misrepresentation relates to the quality of the good sold."  *Martin v. Ford Motor Co.*, 765 F. Supp. 2d 673, 684 (E.D. Pa. 2011).  Second, to maintain a viable claim under the UTPCPL, "a plaintiff must allege . . . that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."  *Schwartz v. OneWest Bank, FSB*, No. 13-0113, 2013 U.S. Dist. LEXIS 162613, at *17 (E.D. Pa. Nov. 13, 2013).  Mr. Kotsur purchased a home in which his Goodman unit already had been installed by the builder.  (Compl. ¶ 69.)  He does not allege that he personally purchased the unit, much less that he relied on any representations given by the Defendants as part of the purchase.

1.  **The UTPCPL claim is barred by the economic loss doctrine.**

Pennsylvania law "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract."  *Mazur v. Milo's Kitchen, LLC*, No. 12-1011, 2013 U.S. Dist. LEXIS 89126, at *22-23 (W.D. Pa. May 24, 2013); *DeFabo v. Andersen Windows, Inc.*, 654 F. Supp. 2d 285, 292 (E.D. Pa. 2009) (same); *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002) (holding that the economic loss doctrine applies to UTPCPL claims).  A UTPCPL claim cannot be used to recover economic losses when a contract such as a warranty governs the relationship between the parties.  *Schwartz*, 2013 U.S. Dist. LEXIS 162613 at *20; *see also Melhorn Sales, Serv. & Trucking Co. v. Rieskamp Equip. Co.*, 2010 U.S. Dist. LEXIS 25398, at *14 (E.D. Pa. Mar. 18, 2010) (when "the purchaser of a product has sued the manufacturer, and the only loss that the purchaser alleges is an economic loss stemming from the

product's failure to operate as expected, express and implied warranties under contract law are best suited to compensate the purchaser for a loss in product value" ) (internal quotations omitted).  In such a case, parties are left to their contractual remedies and may not expand those remedies by bringing a tort claim.  *Knit With v. Knitting Fever, Inc.*, No. 08-4775, 2009 U.S. Dist. LEXIS 98217, at *62 (E.D. Pa. Oct. 20, 2009)*; see also Sunshine v. Reassure Am. Life Ins. Co.*, 515 F. App'x 140, 144-45 (3d Cir. 2013); *Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 531 (E.D. Pa. 2013); *Pollock v. NFL*, No. 12-130, 2013 U.S. Dist. LEXIS 35865, at *21 (M.D. Pa. Mar. 15, 2013); *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 518-19 (E.D. Pa. 2012).

The only damages that Mr. Kotsur allegedly incurred were costs to repair his Goodman unit (Compl. ¶¶ 70-74), by definition, economic losses.  *Fleisher v. Fiber Composites, LLC*, No. 12-1326, 2012 U.S. Dist. LEXIS 157343, at *27 (E.D. Pa. Nov. 2, 2012) ("Economic losses are defined as damages for inadequate value, *costs of repair and replacement of the defective product*, or consequential loss of property, without any claim of personal injury or damage to other property.") (emphasis added) (internal quotation mark omitted).  Moreover, the UTPCPL claim is largely indistinguishable from Mr. Kotsur's breach of warranty claims.  Each claim is based on the common allegation that Mr. Kotsur's unit failed to operate as warranted; Mr. Kotsur even describes the "breach of express and implied warranties [as] unfair, unlawful and/or fraudulent business practices."  (Compl. ¶ 112.)  The UTPCPL claim is barred by the economic loss doctrine.  *Melhorn Sales*, 2010 U.S. Dist. LEXIS 25398, at *16.

  **2.  The allegations as to reliance are deficient.**

"To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."  *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 501

(Pa. 2004); *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 202 (Pa. 2007) ("a plaintiff alleging violations of the Consumer Protection Law must prove justifiable reliance"). This requirement is rooted in the text of the statute. The UTPCPL allows private actions only by those who have suffered "any ascertainable loss of money or property . . . *as a result of* the use or employment by any person of a method, act or practice declared unlawful by . . . th[e] act." 73 Pa. Cons. Stat. § 201-9.2. Numerous courts in Pennsylvania have held that this language imposes a reliance requirement that all private plaintiffs proceeding under the statute must satisfy. *See, e.g.*, *Schwartz v. Rockey*, 932 A.2d 885, 897 n.16 (Pa. 2007); *Toy*, 928 A.2d at 202; *Yocca*, 854 A.2d at 438; *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001). The justifiable reliance requirement applies "to *all* substantive subsections of the Consumer Protection Law." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008).

Mr. Kotsur's complaint points to statements appearing on the Defendants' websites, contending in conclusory fashion that "[a]ll of these representations were intended to induce, and did induce, plaintiff and members of the class to purchase Goodman Units." (Compl. ¶ 67.) This allegation is thin, indeed, especially considering that Mr. Kotsur purchased a home and it was the home builder that purchased the Goodman unit. (*Id.* ¶ 69.) Mr. Kotsur does not even allege that he ever saw the statements on the Defendants' websites, much less that he relied on them before he purchased his unit. He does not even allege that he visited the websites. To state a claim under the UTPCPL, a plaintiff must show that he "justifiably relied" on the alleged misrepresentations at the time he purchased the product, *Hunt*, 538 F.3d at 224-25, and must specifically identify which allegedly false statements he saw and relied upon. *Heller v. Shaw Indus., Inc.*, No. 95-7658, 1997 U.S. Dist. LEXIS 12399, at *65-66 (E.D. Pa. Aug. 18, 1997).

Mr. Kotsur does neither. Plainly, he could not have relied to his detriment upon representations that he never saw.[4]

In addition, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotations omitted); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (a complaint "may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged"); *Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*, 652 F.Supp.2d 576, 595 (E.D. Pa. 2009) (same; citing *Swartz*). That is exactly what Mr. Kotsur does in his complaint by attributing allegedly false representations to the Defendants as a group (*see*, *e.g.*, Compl. ¶ 112), without specifying the alleged fraudulent conduct pertaining to each Defendant as Rule 9(b) requires.

**D.      Plaintiff Fails To Plead A Plausible Claim For Unjust Enrichment.**

It is well established under Pennsylvania law that "the quasi-contractual doctrine of unjust enrichment is inapplicable when the relationship between the parties is founded on a

---

[4] Nor has Mr. Kotsur plausibly alleged that the Defendants had knowledge of a defect in his particular unit at the time it was sold. The sum and substance of the allegations regarding the Defendants' supposed knowledge appear in two exhibits listing complaints posted by consumers and service technicians on websites that have no connection to the Defendants. (Compl. Ex. C-D.) Some of the individuals are identified by name, many are not. From the face of the complaint, none of the postings came from consumers in Pennsylvania, the class of persons that Mr. Kotsur purports to represent. But, nearly all of the complaints were posted after 2009, the year that Mr. Kotsur obtained his Goodman unit. As the Ninth Circuit aptly explained in the context of analyzing a similar consumer protection statute, customer complaints "[b]y themselves . . . are insufficient to show that the manufacturer had knowledge of the defect." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (quoting *Berenblat v. Apple, Inc.*, Nos. 08-4969 & 09-1649, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010)).

written agreement or express contract." *Goleman v. York Int'l Corp.*, No. 11-1328, 2011 U.S. Dist. LEXIS 85477, at *15 (E.D. Pa. Aug. 3, 2011) (quoting *Hershey Food Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987)).  Indeed, in *Goleman*, a consumer brought a putative class action against a furnace manufacturer, seeking to recover for unjust enrichment because the furnace did not work properly.  *Id.* at *1, 4.  The court specifically held that a limited warranty governed the relationship between the parties and, thus, dismissed the unjust enrichment claim as a matter of law.  *Id.* at *16.  The result should be no different in this case.

## IV. CONCLUSION

For the foregoing reasons, Mr. Kotsur fails to meet the basic pleading requirements necessary to state a cause of action on his own behalf, much less on behalf of a putative class.  The Court should dismiss the complaint in its entirety.  A proposed order is attached as Exhibit B.

Dated: March 4, 2014                                  Respectfully submitted,


                                                      s/ Kimberly A. Brown
                                                      Kimberly A. Brown
                                                      E-mail: kabrown@jonesday.com
                                                      JONES DAY
                                                      500 Grant Street, Suite 4500
                                                      Pittsburgh, PA 15219-2514
                                                      Telephone: (412) 394-7995
                                                      Facsimile: (412) 394-7959

                                                      Theodore M. Grossman (pro hac vice
                                                      application to follow)
                                                      tgrossman@jonesday.com
                                                      JONES DAY
                                                      North Point, 901 Lakeside Avenue
                                                      Cleveland, OH 44114-1190
                                                      Telephone: (216) 586-7268
                                                      Facsimile: (216) 579-0212

                                                      Counsel for Defendants
                                                      GOODMAN GLOBAL, INC., GOODMAN
                                                      MANUFACTURING COMPANY, L.P., and
                                                      GOODMAN COMPANY, L.P.

## **CERTIFICATE OF SERVICE**

     I hereby certify that on March 4, 2014, I electronically filed the foregoing using the CM/ECF system.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.  In addition, I further certify that a copy of the foregoing was served via U.S. mail on the following counsel of record:

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102

Jonathan K. Tycko
Lorenzo B. Cellini
TYCKO & ZAVAREEI, LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036

Gary E. Mason
Monica Bansal
WHITFIELD BRYSON & MASON LLP
1625 Massachusetts Ave., N.W., Suite 605
Washington, D.C. 20036

                                              s/ Kimberly A. Brown
                                              Counsel for Defendants
                                              GOODMAN GLOBAL, INC., GOODMAN
                                              MANUFACTURING COMPANY, L.P., and
                                              GOODMAN COMPANY, L.P.