IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT KOTSUR, on behalf of himself and all others similarly situated, Plaintiff, | : : : : : |
| v. | : CIVIL ACTION : No. 14-1147 |
| GOODMAN GLOBAL, INC., GOODMAN MANUFACTURING COMPANY, L.P., and GOODMAN COMPANY, L.P., Defendants. | : : : : : |

**WENDY BEETLESTONE, J.**                                                                   **AUGUST 22, 2016**

## MEMORANDUM OPINION

This is a putative class action against a heating, ventilation, and air conditioning (HVAC) manufacturer. Defendant Goodman Global Inc. is the parent company of the other two defendants, Goodman Manufacturing L.P. and Goodman Company L.P.; the latter two "are in the business of designing, manufacturing, and selling to distributors and dealers heating, ventilation, and air conditioning [HVAC] components for use in residential applications." *Defendants' Answer and Affirmative Defenses to Plaintiff's First Amended Class Action Complaint* (ECF No. 84) [hereafter "*Answer*"], at ¶¶ 1, 12.[1]

Before the Court are Plaintiff Robert Kotsur's "Motion for Class Certification" (ECF No. 62) [hereafter "*MCC*"] and Goodman's "Motion to Exclude Opinions of [Plaintiff's Metallurgical Engineering Expert] Paul J. Sikorsky" (ECF No. 82). The Court will deny both motions.[2]

---

[1] All three defendants will be referred to collectively as "Goodman."

[2] The motion to exclude Paul Sikorsky's opinions will be denied as moot, as even considering and crediting those opinions, Kotsur does not satisfy several class-certification requirements. Because Sikorsky's opinions are not critical to the Court's class-certification holding, the Court will discuss parts of his declaration and deposition testimony without analyzing its reliability under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Such an analysis would be required at the class action stage only if Sikorsky's opinions were critical to holding that any of the class-certification requirements were met. *In re Blood Reagents Antitr. Litig.*, 783 F.3d 183, 187 (3d Cir. 2015).

1

I.      Background

Kotsur alleges HVAC units built with a Goodman-manufactured evaporator coil ("coil")³ malfunction – cease to adequately heat or cool air – because a defect causes the coil to "prematurely leak refrigerant during normal use." *Am. Compl.*, ¶ 23. Kotsur notes formicary corrosion – a particular type of corrosion in copper caused by exposure to air, moisture, and certain organic acids – as a "potential cause" of the alleged malfunction (*i.e.* a potential defect). *Id.* at ¶ 63. Kotsur argues he need not identify a specific, common defect because a high rate of malfunction in Goodman's HVAC units shows such a defect exists. *MCC*, 6-10.

Goodman sells HVAC component parts to distributors and dealers, not to consumers. *Defendants' Opposition to Plaintiff's Motion for Class Certification* (ECF No. 81) [hereafter "*D. Opp.*"], at 7. Independent contractors hired by the homeowner or homebuilder build HVAC systems out of component parts and install the systems in homes. *Id.* at 8-9. Repairs and maintenance of HVAC systems are performed by independent HVAC servicers. *Id.* at 10. When servicers replace a Goodman part, they submit a warranty claim. *MCC*, Ex. 6 (Goodman Limited Warranty). Goodman's parts-only warranty limits the consumer's "only remedy [to] a replacement part" and disclaims liability for "labor, freight, or any other cost associated with the service, repair, or operation of the unit." *Id.* Goodman maintains a database of all parts returned under warranty; this database has the name and contact information of some but not all homeowners whose parts were returned. *MCC*, 26; *D. Opp.*, 24; *Plaintiff's Reply Brief in Support of MCC* (ECF No. 100) [hereafter "*P. Reply*"], at 24-25.

---

³ An evaporator coil is one of three major components in an HVAC system; the other two are the compressor and condenser. *First Amended Class Action Complaint*, (ECF No. 79) [hereafter "*Am. Compl.*"], ¶ 17. The evaporator coil is located inside the home and converts liquid refrigerant to gas, producing cool air. *Id.* at ¶ 18.

2

In 2009, Kotsur bought a new home with a pre-installed HVAC unit built with a Goodman evaporator coil. *Am. Compl.*, ¶ 94. Before Kotsur bought the home, the homebuilder gave him a stack of warranties, including Goodman's limited warranty for its HVAC parts. *D. Opp.*, Ex. J (Kotsur dep.), 37-39. Though Kotsur was familiar with the concept of limited and extended warranties, he did not review the Goodman warranty before he bought his home. *Id.* at 114-31. He did not rely on any advertisement or other representation by Goodman in buying his home. *Id.* at 56-57, 137.

Kotsur's HVAC unit first began to malfunction in May 2011. *Am. Compl.*, ¶ 95. A technician from HVAC servicer High Tech Heating & Cooling found the unit low on refrigerant pressure, but could not locate a leak despite conducting a pressurized gas test. *Id.* The servicer added more refrigerant. *Id.* In May 2013, Kotsur's unit malfunctioned again. *Id.* at ¶ 96. A technician from HVAC Servicer Guy M. Cooper Mechanical Contractors ("Cooper") added more refrigerant. The technician did not perform a leak test; he noted the outdoor part of Kotsur's unit was missing a cap and also recommended leveling the unit. *D. Opp.*, Ex. F (service invoice). In July 2013, Kotsur's unit malfunctioned again. *Am. Compl.*, ¶ 97. A Cooper technician checked the refrigerant pressure and found no problem; he also installed metal locking service caps on valves outside the home to help prevent leaks. *D. Opp.*, Ex. H (service invoice). In August 2013, Kotsur's unit malfunctioned again. *Am. Compl.*, ¶ 98. A Cooper technician found the refrigerant pressure was low, conducted a "bubble test" which "indicated . . . that there was a leak in the coil." *D. Opp.*, Ex. G, ¶ 9 (service invoice). This technician told Kotsur he would need to conduct a "dye test" over several visits to the home to "locate the leak on the evaporator coil," but Kotsur declined to have this test performed. *Id.* The technician did not "find the leak, the exact location of the leak, or the cause of the leak." *Id.* The technician also detected

3

a leak in the HVAC unit's outdoor Schrader valve. *Id.* Cooper installed a new evaporator coil and a new Schrader valve in Kotsur's HVAC unit, providing the coil free of charge but charging him for labor and refrigerant. *Am. Compl.*, ¶ 99; *D. Opp.*, Ex. G, ¶ 12.

Kotsur claims Goodman (1) breached its express warranty that "[t]he heating or conditioning unit [assembled with Goodman parts] is . . . free from defects" because the parts-only limitation is void as unconscionable or failing its essential purpose, (2) breached the implied warranty of merchantability, and (3) was unjustly enriched. *Am. Compl.*, 30-33.

Kotsur's motion for class certification proposes two putative classes: (1) a damages class consisting of all Pennsylvania homeowners who incurred costs replacing a Goodman evaporator coil manufactured since 2006 and covered by Goodman's express limited warranty, and (2) an injunctive relief class consisting of all Pennsylvania homeowners whose home has an HVAC unit with a Goodman evaporator coil manufactured since 2006 and covered by Goodman's express limited warranty. *MCC*, 1.

## II.     Legal Standards

The Court has already determined it has jurisdiction over this action under the Class Action Fairness Act. *See Order of Nov. 17, 2014* (ECF No. 70).

Venue in the Eastern District of Pennsylvania is proper because the case was removed from the Court of Common Pleas of Bucks County. 28 U.S.C. § 1441(a); 28 U.S.C. § 118(a).

Although homeowners lack a contractual relationship with Goodman, they have standing to sue for breach of warranty. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 48 (3d Cir. 2009).

To be certified, a "putative class must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Marcus v. BMW of N. Am.*, 687 F.3d 583, 591

(3d Cir. 2012); Fed. R. Civ. P. 23. In addition, a putative damages class, under Rule 23(b)(3), must be "ascertainable." *Id.* at 592-93.

Plaintiff bears the burden of proving each class action certification requirement by a preponderance of the evidence. *Marcus*, 687 F.3d at 591. The Court's analysis is "rigorous" and may involve merits determinations and credibility determinations necessary to resolve class certification issues. *Id.* at 591, 601-02.

## III. Discussion

### A. Rule 23(a) Requirements

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable" (numerosity); "there are questions of law or fact common to the class" (commonality); "the claims or defenses of the representative parties" are "typical of the claims or defenses of the class" (typicality); and class representatives "fairly and adequately protect the interests of the class" (adequacy). Fed. R. Civ. P. 23.

#### 1. Numerosity

There is no minimum number of members needed for a suit to proceed as a class action, but, generally, the numerosity requirement is satisfied if the named plaintiff can prove over 40 potential plaintiffs. *Marcus*, 687 F.3d at 595. In the Court's opinion holding it has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), the Court found "the putative class include[s] at least 100 members" based on the number of warranty claims made on Goodman evaporator coils since 2006, which Goodman revealed under seal. *Memorandum of Nov. 17, 2014*, at *4-5 (ECF No. 69).

However, the CAFA numerosity holding is not dispositive of Rule 23 numerosity. CAFA requires "the number of members of all *proposed* plaintiff classes in the aggregate [to be greater]

than 100." 28 U.S.C. § 1332(d)(5)(B) (emphasis supplied). Federal Rule of Civil Procedure 23(a)(1) requires "the class [to be] so numerous that joinder of all members is impracticable." Because the Rule 23 numerosity requirement applies to the actual class and must be proven by a preponderance of the evidence, a court may not speculate that a sufficient number of plaintiffs exist. *Marcus*, 687 F.3d at 596. Even "a bet worth making . . . cannot support a finding of numerosity sufficient for Rule 23(a)(1)." *Id.* "[W]here a class is some subset of a larger pool, the trial court may not infer numerosity in the larger pool alone." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013).

Kotsur asks the Court to infer numerosity based on the size of a larger pool: Pennsylvania residents who filed warranty claims for Goodman evaporator coils. *MCC*, 21, 28. The damages and injunctive/declaratory relief classes may be subsets of the pool of those who filed warranty claims. Both classes require members to be homeowners, and the damages class requires members to have "paid for labor, materials, and/or parts in connection with the replacement of an evaporator coil . . . ." *Id.* at 1.

As Kotsur fails to meet several other class certification requirements, described *infra*, the Court need not decide whether it would have to speculate or rely solely on an inference in order to conclude that a sufficient number of Pennsylvania claimants own their homes and paid costs to replace their evaporator coils. The Court need not decide the numerosity issue.

### 2. Commonality

The commonality requirement is that "[class members'] claims must depend upon a common contention . . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551

(2011). The "commonality requirement does not require identical claims or facts among class members[;] even a single common question will do." *Marcus*, 687 F.3d at 597 (internal citations omitted). *Marcus* held the common question of whether the product at issue was defective satisfied the commonality requirement. *Id.* All putative class members in this action must also prove whether their evaporator coils were defective. As in *Marcus*, commonality is satisfied.

### 3. Typicality and Adequacy

The Court of Appeals has held "[t]he proper consideration in assessing typicality . . . include[s] three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

The adequacy inquiry has two parts: the first "tests the qualifications of the counsel to represent the class," while the second "seeks to uncover conflicts of interest between named parties and the class they seek to represent." *Id.* at 602. "There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and this second part of the adequacy inquiry that focuses on possible conflicts of interest. 'Because of the similarity of [the typicality and adequacy] inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both.'" *Id.* (quoting *Beck v. Maximus*, 457 F.3d 291, 296 (3d Cir. 2006)).

Because of defenses unique to him, Kotsur cannot satisfy the typicality and adequacy requirements.

For all three claims, Goodman has a potential defense that the evaporator coil was not defective and any refrigerant leak was caused by a secondary cause.[4] This "no defect" defense may be uniquely strong with respect to Kotsur as: (1) the evaporator coil was not the only part replaced on his HVAC system; (2) Kotsur's HVAC servicer made different diagnoses of the problem on separate visits to his home; (3) Kotsur's coil was discarded rather than returned under warranty, so no further testing is possible; (4) Kotsur declined his HVAC servicer's offer to perform a "dye test" to provide more information about the suspected leak in his evaporator coil. Kotsur may not adequately represent class members whose leaky evaporator coil diagnosis was more definitive or whose coils remain available for testing.

Fact-specific equitable considerations related to Kotsur's breach of express warranty and unjust enrichment claims are also susceptible to unique defenses. To prove the express warranty's parts-only limitation was unconscionable,[5] plaintiffs must prove (1) they had no meaningful choice in accepting the limitation ("procedural unconscionability"), and (2) the provision unreasonably favors Goodman ("substantive unconscionability"). *Quilloin v. Tenet Health Sys. Phila., Inc.*, 673 F.3d 221, 230, 235 (3d Cir. 2012). To assess procedural

---

[4] The express warranty provides that the product was free from defect. *MCC*, Ex. 6. To prove breach of the implied warranty, plaintiffs must prove their evaporator coils were unfit for the ordinary purpose for which they were used, in other words, that they were defective. *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). Plaintiffs who allege only circumstantial evidence of a defect must prove three elements: "(1) that the product malfunctioned; (2) that [they] used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." *Id.* Unjust enrichment requires proof of "[1] benefits conferred on one party by another, [2] appreciation of such benefits by the recipient, and [3] acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value." *Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000). A manufacturing defect in the evaporator coil is the circumstance alleged to make it inequitable for Goodman to disclaim liability for replacement costs.

[5] Kotsur argues the parts-only limitation is invalid because it is unconscionable *or* causes the express warranty to fail its essential purpose. *Am. Compl.*, 31, ¶ 125. An exclusive remedy fails its essential purpose "typically . . . 'when [it] involves replacement or repair of defective parts, and the seller because of his negligence in repair or because the goods are beyond repair, is unable to put the goods in warranted condition.'" *Caudill Seed and Warehouse Co., Inc. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 829 (E.D. Pa. 2000) (quoting *N.Y. St. Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 929 (Pa. Super. Ct. 1989). As Kotsur does not allege Goodman fails to replace evaporator coils under its warranty, the warranty does not fail its essential purpose.

unconscionability, the Court should consider whether the contract was of a "take-it-or-leave it nature," the parties' relative bargaining positions, and the degree of economic compulsion in the bargaining process. *Id.* at 235-36. Kotsur and class members may vary in their level of sophistication, opportunity to review the Goodman warranty before buying their homes or HVAC units, and ability to reject the Goodman product or purchase an extended warranty. Kotsur is a relatively sophisticated consumer; he knew about limited and extended warranties. He received the Goodman warranty before he bought his home but chose not to read it. He admits that had he read the warranty, he may have purchased supplemental coverage. He did not rely on any representation about the quality of Goodman products in deciding to purchase his home.

These factors pertaining to Kotsur but not necessarily to all class members also create a uniquely strong defense to the unjust enrichment claim. *Walter v. Magee-Women's Hosp.*, 876 A.2d 400, 407 (Pa. Super. Ct. 2005) (affirming the dismissal of an unjust enrichment claim in a putative class action and noting, "[u]njust enrichment is essentially an equitable doctrine, application of which depends on the particular factual circumstances of each individual case."); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (holding that an unjust enrichment claim could not be certified in a putative class action and noting, "[b]efore it can grant relief on [an unjust enrichment] claim, a court must examine the particular circumstances of an individual case . . . . [and d]ue to the necessity of this inquiry into the individualized equities . . . courts, including ours, have found unjust enrichment claims inappropriate for class action treatment."); *Grandalski v. Quest Diag., Inc.*, 767 F.3d 175, 185 (3d Cir. 2014) (affirming the district court's denial of class certification where "individual inquiries would be required to

determine whether an alleged overbilling constituted unjust enrichment for each class member" because "[s]uch specific evidence is incompatible with representative litigation").

### B. Damages Class Requirements

Kotsur proposes that the putative damages class is certifiable under Federal Rule of Civil Procedure 23(b)(3). *MCC*, 1. In order to certify a damages class, the Court must find Kotsur satisfies the requirements of Rule 23(a) and (b)(3) and that class members are ascertainable.

#### 1. Ascertainability

Although the ascertainability requirement – that "class [members] must be currently and readily ascertainable" – is not described in Rule 23, it is an "essential prerequisite of a class action" which lessens the administrative burden of identifying class members, protects absent class members by ensuring practicable notice, and protects defendants by identifying those bound by the final judgment. *Marcus*, 687 F.3d at 592-93.[6]

"[A]scertainability entails two important elements. First, the class must be defined with reference to objective criteria. Second, there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes*, 725 F.3d at 355.

The damages class' definition has several elements: (1) the class member owned a Pennsylvania residence with a Goodman unit; (2) the unit was manufactured since 2006; (3) the class member incurred labor, materials, and/or parts costs in replacing the unit's evaporator coil; (4) the costs were incurred while the unit was under warranty. These elements refer to objective criteria.

---

[6] The ascertainability requirement does not apply to a putative injunctive relief class sought to be certified under Rule 23(b)(2). *Shelton v. Bledsoe*, 775 F.3d 554, 563 (3d Cir. 2015).

However, Kotsur has not proven his proposed method of determining whether a putative class member meets the class definition is reliable and administratively feasible. He proposes "[a]ll that would be needed to determine if a person is within the class[] would be the serial number of that person's Goodman Unit or evaporator coil [as] the class administrator could simply look up the unit in Goodman's warranty database and determine whether the evaporator coil had been replaced under warranty." *MCC*, 26. Kotsur himself is not ascertainable by this method because his HVAC servicer never filed a warranty claim. Kotsur also has not proved by a preponderance of the evidence that putative class members will know their replaced part's serial number. Kotsur's HVAC servicer's invoice lists the serial number of the part replaced, *see MCC*, Ex. 22, but other invoices (if potential class members retained them) may not. Without a serial number, it would be hard to ascertain when a coil was manufactured and whether it was covered by warranty when it was replaced.

### 2. Rule 23(b)(3) Damages-Class Requirements

Under Federal Rule of Civil Procedure 23(b)(3), plaintiff must prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In evaluating a motion under Rule 23(b)(2) there is necessarily "some analysis of whether the proposed class-wide evidence will actually be sufficient for the class to prevail on the predominant issues in the case. If class-wide evidence is lacking, the court cannot be adequately assured that individualized evidence will not later overwhelm the case and render it unsuitable for class-wide adjudication." *Harnish v. Widener Sch. of Law*, Slip Op. 15-3888 (3d Cir. June 6, 2016).

Lack of predominance is the most serious problem in certifying the putative class here.[7] Several key factual questions must be decided individually for each class member: whether the class member's HVAC unit's malfunction was caused by a defect ("proximate causation"), whether the unit malfunctioned at all, and whether the parts-only limitation was unconscionable or unjustly enriched Goodman ("equitable considerations").

### a. Proximate causation

Under Pennsylvania law, to recover damages in a contract or tort action, the plaintiff must prove the damages were proximately caused by the defendant's conduct. *Nat'l Control Corp. v. Nat'l Semiconductor Corp.*, 833 F.2d 491, 496 (3d Cir. 1987) (citing *Delahanty v. First Pa. Bank., N.A.*, 464 A.2d 1243, 1258 (Pa. Super. Ct. 1983)); *see also* 13 Pa C.S. § 2314 cmt. 13 ("In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained. In such an action an affirmative showing by the seller that the loss resulted from some action or event following his own delivery of the goods can operate as a defense."). While in a breach of warranty claim the plaintiff need not establish a particular defect, as "the existence of a malfunction alone . . . establishes a 'defective condition,'" *Kridler v. Ford Motor Co.*, 422 F.2d 1182, 1885 (3d Cir. 1970) (quoting *MacDougall v. Ford Motor Co.*, 257 A.2d 676 (Pa. Super. Ct. 1969)), the plaintiff must prove proximate causation, *i.e.* that the malfunction was not caused by abnormal use or a reasonable secondary cause. *MacDougall*, 257 A.2d at 391.

Where class members must resort to individual proofs to show a defect caused their product to malfunction, the predominance requirement is not satisfied. *Marcus*, 687 F.3d at 603.

---

[7] As the predominance requirement is not met, the Court will not analyze the non-exclusive list of factors provided in Federal Rule of Civil Procedure 23 to determine if a class action is the superior method. Fed. R. Civ. P. 23(b)(3)(A)-(D).

*Marcus* held it was improper to certify a class for breach of contract and breach of warranty claims arising out of an alleged defect in automobile tires causing them to be more susceptible to going flat; the Court reasoned, "*any* tire can 'go flat' for myriad reasons [and e]ven 'defective' tires can go flat for reasons completely unrelated to their defects [, such that] to determine why a particular class member's [tire] has 'gone flat and been replaced' requires an individual examination of that class member's tire." *Id.* at 604. The Court held that "[t]hese individual inquiries are incompatible with Rule 23(b)(3)'s predominance requirement." *Id.*

Like tires, HVAC units can malfunction for many reasons. Some malfunction causes do not involve a manufacturing defect: damage to coils during shipping, improper coil installation, damage to coils caused by homebuilders and servicers, chemicals in the home environment causing coil corrosion, failure to properly maintain the HVAC system. *D. Opp.*, 14-15 & Exhibit C, ¶¶ 18-30 (Declaration of Goodman HVAC expert Benjamin DiMarco) (describing non-defect causes of evaporator coil leaks); *id.* at Exhibit D, ¶ 13 (Declaration of Goodman executive Marshall Blackham) (noting that among returned evaporator coils Goodman tested, there were at least 56 identifiable causes, many involving conduct after the coil left Goodman).

Kotsur's metallurgical engineering and HVAC experts agree that an evaporator coil may leak for many reasons and that determining the cause of a leak must be done case-by-case. *D. Opp.*, Exhibit B at 86-87 (Deposition of Kotsur engineering expert Paul Sikorsky) (agreeing that every HVAC manufacturer says proper installation is critical to HVAC and coil performance); *id.* at 99-108 (agreeing that non-defect causes of coil failure exist, though disagreeing about their frequency); *id.* at 132-33 (agreeing there are many causes of coil corrosion besides formicary corrosion); *id.* at Exhibit E, 143 (Deposition of Kotsur HVAC expert Robert Armstrong) (agreeing there are a number of causes of coil leakage and finding the cause requires case-by-

13

case testing). Kotsur's HVAC servicers also agree there are many causes of HVAC unit and coil malfunction, including faulty installation, in-home contaminants, and failure to maintain the unit. *Id.* at Exhibit F, ¶ 6 (Declaration of Matt Morio); *id.* at Exhibit G, ¶ 4 (Declaration of Tristan Gilliland); *id.* at Exhibit H, ¶ 4 (Declaration of Giuseppe Derro, Jr.).

Acknowledging that some class members' coils may not have leaks caused by a manufacturing defect and that there may not be a single defect, Kotsur argues individualized proof of the cause of each class member's leak is unnecessary as class members can prove defect via statistical and representative evidence: (1) expert testimony that a certain rate of HVAC-unit failure indicates a product defect, *MCC*, 7, 10; (2) expert testing of a representative sample of Goodman coils replaced under warranty, *id.* at 11; and/or (3) Goodman internal documents and actions suggesting acknowledgement of a formicary corrosion problem in evaporator coils, *id.* at 13-17; *P. Reply*, 15-19. Kotsur argues that under *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), the court should find this statistical and representative evidence to be competent proof of classwide liability eliminating the need for individualized proof of defect which would defeat predominance. ECF No. 134 ("Plaintiff's Notice of Supplemental Authority").

However, *Tyson Foods* does not hold that where individualized proof is lacking or would defeat predominance, plaintiffs may *always* substitute statistical or representative evidence. Indeed, the Court "reiterate[d]" that "[w]hether a representative sample may be used to establish classwide liability will depend on the purpose for which the sample is being introduced and on the underlying cause of action." *Tyson Foods*, 136 S. Ct. at 1049. The *Tyson Foods* class members claimed Tyson failed to pay them overtime for "donning and doffing" protective gear. *Id.* at 1042. Representative evidence, mainly a study showing the average employee "donning and doffing" time, was offered as evidence of the time individual class members spent "donning

and doffing." *Id.* at 1043. The Court held that since the representative evidence would be admissible and establish liability in an individual action, such "evidence cannot be deemed improper merely because the claim is brought on behalf of a class"; in other words, "[i]ts permissibility turns not on the form a proceeding takes—be it a class or individual action—but on the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Id.* at 1046. The court noted several factors supporting the representative evidence's relevance: (1) that Tyson had not kept records of individual employees' "donning and doffing" time, despite a statutory obligation to do so, and (2) that class members were similarly situated, working at the same factory, performing the same work, and being paid under the same policy. *Id.* at 1047-48.

This Court need not decide whether the statistical and representative evidence Kotsur proposes is relevant proof of defect for individual class members.[8] Even if such evidence were admissible, individual evidence would predominate. Even if class members could suggest a defect via representative/statistical proof, their claims would not be established (as they were in *Tyson Foods*). Class members would still have to prove the absence of a non-defective cause of their coils' leaks, an individualized area of inquiry which would predominate at trial.

### b. Existence of a Malfunction

Kotsur faces a predominance problem beyond that defeating class certification in *Marcus*: not only is every evaporator coil replaced under warranty not necessarily defective, but not every coil replaced under warranty has necessarily even malfunctioned (*i.e.* leaked).

---

[8] The Court has concerns that inferring an individual class member's coil was defective because many, or even most, Goodman coils were defective, would amount to the "Trial by Formula . . . depriv[ing] defendants of their right to litigate statutory defenses to individual claims" that the *Tyson Foods* Court distinguished from its own case. *Id.* at 1048 (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

In *Marcus*, a flat tire is necessarily a malfunction. In this action, an HVAC unit failing to heat or cool malfunctions, but the replaced evaporator coil may not be the source of the malfunction even if diagnosed as such. Kotsur's HVAC expert acknowledges servicers misdiagnose coils as leaky and is aware of media coverage of such misdiagnoses. *D. Opp.*, Ex. C, 58-62. Goodman honors almost all warranty claims as a matter of commercial comity and does not test 97% of returned evaporator coils to confirm a leak. *D. Opp.*, 13-14. Goodman's Distributor Manual does not require HVAC servicers to test coils before returning them under warranty; rather servicers are required to "be sure all requested information is provided" and that the part number and vendor code are accurate. *MCC*, Ex. 15, 688. Kotsur and Goodman's metallurgical engineering experts tested or reviewed testing of a subset of returned coils; both concluded that some returned coils do not leak.[9]

This further suggests that replacement under warranty is a problematic proxy for a defective evaporator coil. Thus, individualized proof of malfunction is necessary, which defeats predominance.

### c. Equitable Considerations

As noted above, proving that the parts-only limited warranty was unconscionable requires proof about individual class members' bargaining process, including their level of sophistication, whether they were given the warranty before they purchased the product or their homes, and whether they relied on representations from Goodman. *See supra*, § III(A)(3). These individual-

---

[9] Kotsur's expert, Paul Sikorsky, tested 11 coils which he initially stated were selected randomly, *MCC*, Ex. 1, ¶ 30, but later admitted were selected because they looked the most likely to leak, *D. Opp.*, Ex. B, 165-66. He conducted a "pressure test" on these coils: filling them with 450 pounds per square inch (psi) of nitrogen gas and measuring the gas pressure five minutes later. *MCC*, Ex. 1, ¶ 30. Sikorsky interpreted any drop in pressure to indicate a leak and found nine of the eleven coils leaked (*i.e.* two of eleven did not leak). *Id.* Goodman's expert, Michael Stevenson, reviewed ESI's pressure testing of hundreds of coils returned under warranty from Pennsylvania and nationally. *D. Opp.*, Ex. A, ¶ 9. Stevenson interpreted only pressure drops of 2 psi or more to suggest a leak, reasoning that lower pressure drops could be caused by absorption of the test gas. *Id.* at ¶¶ 6, 12. He concluded testing suggested the majority of coils returned under warranty did not leak. *Id.* at ¶¶ 8-11. Kotsur and Goodman dispute each other's experts' methodology, but no matter which is correct, testing suggests some coils returned under warranty do not leak.

specific issues may predominate, especially if class members' sole proof of defect is representative or statistical evidence.

### C. Rule 23(b)(2) Injunctive-Relief-Class Requirements

To establish standing to sue, a plaintiff must allege an actual injury or, if it has not yet occurred, an injury which is "not too speculative" and "certainly impending." *Clapper v. Amnesty Int'l*, 133 S. Ct. 1138, 1146-47 (2013). "'Allegations of *possible* future injury' are not sufficient." *Id.* at 1147 (*quoting Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). Kotsur has not shown all members of the proposed injunctive relief class, Pennsylvania homeowners with a Goodman HVAC unit manufactured since 2006, have an impending injury. Kotsur alleges Goodman coils fail at a rate higher than the industry standard, but this alleged rate is far lower than 100%. Thus not all putative class members' HVAC units will fail before they should and, even if they do, it may not be caused by formicary corrosion.

Even if the putative injunctive relief class members had standing, the relief requested is improper because it is a disguised request for individualized monetary damages. Federal Rule of Civil Procedure 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011). Future payments to class members would be individualized monetary damages. *Accord Gustafson v. Goodman Mfg. Co., L.P.*, No. 13-8274, 2016 WL 1029333 (D. Ariz. Mar. 14, 2016); *McVicar v. Goodman Global, Inc.*, No. 13-1223, 2015 WL 4945730 (C.D. Cal. Aug. 20, 2015).[10]

---

[10] The injunctive relief class also cannot be certified because such relief must be "appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Although Rule 23(b)(2) classes need not meet the additional predominance and superiority requirements of Rule 23(b)(3), it is well established that the class claims must be cohesive." *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 263-64 (3d Cir. 2011) (internal citation omitted). Class members' disparate factual circumstances and individualized causation issues defeat the cohesion requirement. Which may be more stringent than Rule 23(b)(3)'s predominance requirement. *Id.* at 264 & n.12. For the same reasons individual issues will predominate in the putative damages class, *see supra* § III(B)(2), Kotsur fails to satisfy the cohesion requirement for certifying the injunctive relief class.

**IV.     Conclusion**

Kotsur's motion to certify the class is denied. Kotsur fails to satisfy the typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a); the ascertainability and predominance requirements for the proposed damages class; The injunctive relief class also cannot be certified because class members lack standing and the relief proposed is a disguised request for individualized damages.

Goodman's motion to exclude the opinions of Kotsur's metallurgical engineering expert, Paul Sikorsky, will be denied as moot.

An appropriate order follows.

                                      **BY THE COURT:**

                                      **/S/WENDY BEETLESTONE, J.**

                                      _____

                                      **WENDY BEETLESTONE, J.**

**Date:** August 22, 2016